# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

**AMIR WHITEHURST,**                        :

       **Plaintiff**          :          **CIVIL ACTION NO. 3:17-903**

     **v.**                        :                  **(JUDGE MANNION)**

**LACKAWANNA COUNTY,**                :
**et al.,**
                          :

      **Defendants**         :

                                  :

## MEMORANDUM

Pending before the court is the report of Magistrate Judge Joseph F. Saporito, Jr., which makes recommendations as to each of four motions for summary judgment filed by the various defendants in this action.[1] (Doc. 128).

---

[1] The plaintiff has named thirty-three (33) defendants who are sorted into four groups. The first group is the "County Defendants" which includes Lackawanna County, Lackawanna County Commissioners Patrick O'Malley, James Wansacz and Ed Staback, and Robert McMillian, warden of the Lackawanna County Prison. The second group is the "Corrections Defendants" which includes the following corrections officers: Sean Sayer, Nicholas Hughes, Mark Johnson, Donald Lavin, Brian Hughes, Robert Mazzino, Trent Antoine, Jason Ortona, Joseph Aloe, John Trama, Lee Myers, Jeffrey Robinson, Robert Gerrity, Paul Soprinski, Joseph Doughty, Bryan Ancherani, John Delfino Jr., Joseph Gorton, (first name unknown Cole, and (first name unknown) Kaczmarek. The third group is the "Medical Defendants" which includes Corrections Care, Inc. ("CCI"), Dr. Edward Zaloga, a physician and the president and chief medical officer of CCI, Alexis Mortizkat, nurse supervisor, and nurses Amy Collarini, Raenn Rodriguez, Nicole Ortona and Ken (last name unknown). The final "group" is actually a

*(footnote continued on next page)*

Based upon the court's review of the record, Judge Saporito's report will be

**ADOPTED IN ITS ENTIRETY**.

Judge Saporito has summarized the factual background of this action

as follows:[2]

> The plaintiff, Amir Whitehurst, was arrested by Scranton police and taken to the emergency room at Moses Taylor Hospital on May 23, 2015. He had fallen from a wall while attempting to evade arrest. He suffered only superficial injury. He was discharged from the E.R. and police brought him to Lackawanna County Prison.
>
> Upon arrival, Whitehurst was assessed by a nurse to determine if he had any specific medical needs and for completion of a suicide risk assessment. The record documents that Whitehurst was uncooperative, and he was placed in a "camera cell" as a result. A nurse noted in his record that he had been using spice, but Whitehurst denies this, contending that he was instead suffering from a mental health crisis. Whitehurst also refused the DPT vaccine, which is required before inmates can be placed in general population at Lackawanna County Prison.
>
> Whitehurst remained in isolation and under observation in the camera cell until June 9, 2015. During that period, Whitehurst was placed in a restraint chair several times for misbehavior. On multiple occasions he was kept in the restraint chair for significantly more than eight hours. Based on logbooks kept by corrections officers and nursing staff, it does not appear that he was monitored by corrections staff every 15 minutes as required by policy, or that his medical condition was evaluated by a nurse every two hours as required by policy.
>
> On May 24, 2015, Whitehurst refused his breakfast and lunch trays. On June 4, 2015, Whitehurst refused food loaf when offered. On June 7, 2015, Whitehurst refused his breakfast tray

---

lone defendant, Dr. Satish Mallik, an independent contractor providing part-time psychiatric services for inmates of the Lackawanna County Prison.

[2] No party has objected to Judge Saporito's summarization of the facts.

or food loaf. On June 9, 2015, Whitehurst refused his breakfast tray.

Throughout this period, Whitehurst refused to take his medications. He was observed by nurses at least three times per day during medication pass, but Whitehurst denies that any meaningful medical evaluation or treatment was performed. Whitehurst was also seen by the prison psychiatrist, Dr. Mallik, during the doctor's rounds every two or three days, but Whitehurst denies that any meaningful psychiatric evaluation or treatment was performed. Dr. Mallik repeatedly assessed Whitehurst as suffering from psychosis, and he prescribed medications, which Whitehurst apparently refused to take.

At 9:00 a.m. on June 9, 2015—one day after he was last seen by Dr. Mallik—a corrections officer summoned a nurse because Whitehurst was "not looking too good." The nurse found Whitehurst on the floor of his cell, naked and in a puddle of liquid.[3] The nurse noted that Whitehurst was confused and, although awake and alert, he was not oriented to person, place, or time. His skin was moist and cold. He had a body temperature of 84.9 degrees, a pulse of 66, respiration of 18, and blood pressure of 70/40. An O2 monitor did not register. The nurse called Dr. Zaloga, who ordered him taken to an outside hospital by ambulance for evaluation and treatment. Later that day, the nursing staff was advised by the hospital that Whitehurst had been admitted to the intensive care unit.

Whitehurst was discharged from the hospital and returned to the prison on June 24, 2015. He had final diagnoses of: pneumomediastinum, uremia, acute renal failure, elevated creatine phosphokinase/rhabdomyolysis, hyperphosphatemia, normocytic anemia, metabolic acidosis, hypothermia due to non-environmental cause, substance abuse, tobacco abuse, pneumoretroperitoneum, protein-calorie malnutrition, schizophrenia, and drug induced thrombocytopenia. He also eventually developed subacute bacterial endocarditis, which required PICC line insertion and a prolonged course of

---

[3] Judge Saporito notes that some evidence characterizes the liquid as water, while other evidence characterizes it as urine and vomit. (Doc. 128, p. 5 n.4).

intravenous antibiotics. Whitehurst was successfully treated, and his endocarditis resolved.

(Doc. 128, pp. 3-6).

Based upon the facts alleged in his complaint, the plaintiff brought the instant action seeking damages from defendants for the use of excessive force and deliberate indifference to his serious medical needs pursuant to 42 U.S.C. §1983, for unlawful discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et seq., and for medical and corporate negligence under state law. Each of the four groups of defendants moved for summary judgment. In considering the motions and the record as a whole, Judge Saporito recommends as follows:

1. Defendants "John/Jane Doe(s)" be **DISMISSED** from this action *sua sponte* pursuant to Rule 21 of the Federal Rules of Civil Procedure;

2. All claims against defendants in their *official capacity* be **DISMISSED** *sua sponte* as redundant, pursuant to the Court's inherent authority to control its docket and avoid duplicative claims;

3. All claims against defendants Patrick O'Malley, James Wansacz, Ed Staback, Robert McMillian, Alexis Mortizkat, Amy Collarini, Raenn Rodriguez, Nicole Ortona, Nurse Ken, Sean Sayer, Nicholas Hughes, Mark Johnson, Donald Lavin, Brian Hughes, Robert Mazzino, Trent Antoione, Jason Ortona, Joseph Aloe, John Trama, Lee Myers, Jeffrey Robinson, Robert Gerrity, Paul Soprinski, Joseph Doughty, Bryan Ancherani, John Delfino Jr., and Joseph Gorton in their *personal capacity* be **DISMISSED** *sua sponte* for failure to state a claim upon which relief can be granted, *without* leave to amend, pursuant to 28 U.S.C. §1915A(b)(1) and 42 U.S.C. §1997e(c)(1);

- 4 -

4. The plaintiff's claim for punitive damages against Lackawanna County be **DISMISSED** *sua sponte* for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. §1915A(b)(1) and 42 U.S.C. §1997e(c)(1);

5. The defendants' motions for summary judgment (Doc. 97; Doc. 99; Doc. 101; Doc. 104) be **GRANTED in part and DENIED in part**;

6. The Clerk be directed to enter **JUDGMENT** in favor of the defendants and against the plaintiff with respect to (a) the plaintiff's ADA claims against all defendants, (b) his §1983 First Amendment retaliation claims against defendants Cole and Kaczmarek, and (c) his state-law vicarious liability claims against defendants CCI, Dr. Edward Zaloga, and Dr. Satish Mallik; and

7. The plaintiff's §1983 Fourteenth Amendment deliberate indifference claims against Dr. Zaloga and Dr. Mallik, his §1983 Monell municipal and corporate liability claims against Lackawanna County and CCI, his state-law medical negligence claims against Dr. Zaloga and Dr. Mallik, and his state-law corporate liability claim against CCI be set down for trial.

(Doc. 128, pp. 60-62).

Four sets of objections have been filed to the report and recommendation.[4] (Doc. 129-30, 131, 132, 133-34). When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); <u>Brown v. Astrue</u>, 649 F.3d 193,

---

[4] The County Defendants, Medical Defendants, defendant Mallik and the plaintiff have each filed objections to Judge Saporito's report. The Correctional Defendants have not filed objections to the report.

195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

The County Defendants have filed the first set of objections in which they object to the Monell liability analysis of Judge Saporito. Specifically, they object to the conclusion that, with respect to the provision of the medical and psychiatric services to inmates at Lackawanna County Prison, the County

can be liable under <u>Monell</u> to the same extent as CCI. A parallel issue was

addressed in <u>Ponzini v. Monroe County</u>, 2015 WL 5123720 (M.D.Pa. Aug.

31, 2015). In that case, Monroe County argued that it could not be held liable

under <u>Monell</u> where the inmate's medical care "is turned over to trained

healthcare providers employed by [a contract medical provider]" at intake. In

addressing that argument, the court found:

> Monroe County has a constitutional obligation to "provide food, clothing, shelter and medical treatment for inmates." <u>White v. Napoleon</u>, 897 F.2d 103, 113 (3d Cir. 1990). At the time of Barbaro's death and incarceration, it is undisputed that Monroe County had chosen to fulfil its medical treatment obligation to the inmate population of MCCF by contracting with a third-party medical provider. Its duty, however,
>
> > is not absolved by contracting with an entity such as [PrimeCare Medical, Inc.]. Although [PrimeCare] has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of [PrimeCare]. In that sense, the county's duty is non-delegable.

<u>Id.</u> at **10-11 (quoting  <u>Ancata v. Prison Health Servs., Inc.</u>, 769 F.2d 700,

705 (11th Cir. 1985)).

While recognizing that that prison officials cannot be required to

second guess the judgment of medical staff in treating an inmate, the court

found that the County's contractual position with PrimeCare was a different

type of relationship than that between medical and correctional staff in the

facility. Further, the court found that the County cannot immunize itself from liability for constitutional harm by delegating the provision of medical care to an independent entity. The court noted that its findings did not run afoul of Monell because the County's potential liability came from its policy of contracting away of a nondelegable duty coupled with its alleged failure to ensure that the contract was properly carried out and the nondelegable duty met.

This court agrees with the reasoning set forth in Ponzini. The court further finds that there are questions of fact about Lackawanna County's vigilance in supervising its contract with CCI which are for the jury to decide. To this extent, the plaintiff has put forth facts indicating that the County had a policy, custom or practice of ignoring known complaints of seriously subpar medical treatment being provided by CCI at the Lackawanna County Prison. As such, summary judgment in favor of the County would be inappropriate at this time, and the County Defendants' objections to the report will be overruled.

The Medical Defendants have filed the next set of objections. Initially, they argue that the summary judgment record does not support the conclusion that the plaintiff suffered a serious medical need prior to June 9,

2015 when he was taken to the hospital.[5] In his report, Judge Saporito noted that the plaintiff "has proffered expert opinion testimony that the deterioration of [plaintiff's] medical condition would have taken more than 24 or 48 hours to progress to the critically ill state he had reached when prison officials finally responded and transferred him to an outside hospital." Based upon this opinion, as well as the expert's deposition testimony, Judge Saporito found that "a reasonable jury could conclude that [plaintiff's] serious medical needs began days earlier, and that the failure of Dr. Mallik and the medical staff supervised by Dr. Zaloga to take action at an earlier date constituted deliberate indifference." The Medical Defendants argue that, although it may

---

[5]As set forth by Judge Saporito:

> [T]he concept of a serious medical need . . . has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences. The detainee's condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. Moreover, the condition must be "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."
>
> Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991) (quoting Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)).

(Doc. 128, p. 36).

be true that the plaintiff's condition took more than 24 to 48 hours to develop, this does not show that there was any evidence of a deterioration of the plaintiff's medical condition prior to June 9, 2015 so as to constitute a serious medical need. In fact, it is the dearth of evidence relating to the plaintiff's medical condition during this time that is part of the issue in this case. While medical notes demonstrate that the plaintiff was seen by medical staff on May 24, 2015, the day of his intake, and on May 26, 2015 and May 27, 2015, when he was placed in a restraint chair by corrections staff, a review of the record shows there are no medical notes whatsoever for the period of May 28, 2015 through June 9, 2015, when he was discovered on the floor of his cell and taken to the hospital. While the Medical Defendants argue that the plaintiff was seen by nursing staff each day during this time for medication pass, there is nothing in the record to reflect that any of these nurses had any extensive interaction with or evaluated the plaintiff and, in fact, the plaintiff contends they had not. The Medical Defendants also argue that the plaintiff saw Dr. Mallik, the prison psychiatrist, on May 28, May 30, June 1, June 4, June 6, and June 8, 2015, who noted that the plaintiff was psychotic and impulsive, but did not note any concerns regarding the plaintiff's medical condition. However, the plaintiff has provided deposition testimony which indicates that, although Dr. Mallik saw him on the foregoing occasions, he

- 10 -

does not recall ever actually speaking with Dr. Mallik. Instead, the plaintiff testified that Dr. Mallik would stand off to the side while the plaintiff spoke with the individual who made rounds with Dr. Mallik. This calls into question how much Dr. Mallik actually interacted with or observed the plaintiff and his medical condition such that he would be able to make any assessment with respect to same. Considering all of the evidence in a light most favorable to the non-moving plaintiff, the court finds that there is a question of fact as to whether the plaintiff suffered a serious medical need prior to June 9, 2015. As such, the Medical Defendants' objections will be overruled on this basis.

Relying on the same argument as above, i.e., that the plaintiff was seen by various nurses and Dr. Mallik throughout the time leading up to his hospitalization none of who noted anything out of the ordinary, the Medical Defendants also argue that they cannot be found deliberately indifferent to the plaintiff's medical needs. In addressing this argument, Judge Saporito found:

> The plaintiff . . . has proffered expert opinion testimony that the medical and psychiatric care received by [him] at the prison during the sixteen-day period before he was hospitalized was deficient and so far below the appropriate standard of care that it constituted reckless disregard for his safety and well-being.[6]

---

[6]Here, Judge Saporito notes:

*(footnote continued on next page)*

> Based upon the evidence of record, viewed in a light most favorable to the non-moving plaintiff, a reasonable jury could conclude that Dr. Mallik, his treating psychiatrist while incarcerated, and Dr. Zaloga, his treating physician while incarcerated, were deliberately indifferent to [plaintiff's] serious medical needs.

(Doc. 128, p. 41).

This court agrees that the evidence presented by each of the parties creates a material issue of fact as to whether the Medical Defendants were deliberately indifferent to the plaintiff's serious medical needs. Thus, the issue is one for the jury to resolve. The Medical Defendants' objections will be overruled on this basis.

The Medical Defendants next argue that there is insufficient evidence to support supervisory and Monell claims against CCI and Dr. Zaloga for failing to ensure adequate staffing to provide basic medical and psychiatric

---

> The defendants argue that they were not deliberately indifferent because [plaintiff] was provided with "some" medical treatment, and not "ignored," because Dr. Mallik and various nurses saw [plaintiff] at regular intervals while he was in isolation. The plaintiff's evidence, however, suggests that, rather than a mere difference in opinion between medical or psychiatric professionals, Zaloga and Mallik provided no *meaningful* medical or psychiatric care during this period in isolation, effectively denying treatment altogether for [plaintiff's] serious medical needs. This is a disputed factual issue appropriate for a jury to resolve.

(Doc. 128, p. 41).

care or failing to ensure adequate training or supervision of nurses and corrections staff in reckless disregard for plaintiff's well-being. The Medical Defendants again rely on the fact that the plaintiff was seen by medical staff and provided medication on various occasions. Plaintiff's experts' testimony indicating that Dr. Zaloga and Dr. Mallik failed to ensure adequate staffing to provide basic medical and psychiatric care or to ensure adequate training or supervision of his staff in reckless disregard for inmate safety, as well as plaintiff's evidence relating to prior incidents involving subpar medical treatment of inmates, suggest there is a question of fact for the jury to decide here. As such, the Medical Defendants' objections will be overruled on this basis.

Finally, the Medical Defendants argue that a claim for punitive damages against CCI and Dr. Zaloga is not supported by the record because the evidence does not support a finding that the Medical Defendants' acts amounted to intentional, willful, wanton or reckless conduct. The court agrees with Judge Saporito that at this juncture, viewing all of the evidence in a light most favorable to the non-moving plaintiff, a jury could find an award of punitive damages to be warranted. As such, the Medical Defendants' objections will be overruled on this basis as well.

Dr. Mallik has filed the third set of objections in which he argues, as did the Medical Defendants, that there is insufficient evidence to support the deliberate indifference and/or serious medical need claims against him.[7] Here, Dr. Mallik argues that Judge Saporito relied exclusively on the report and testimony of Dr. Evans, the plaintiff's internal medicine and addiction medicine expert, to conclude that the record demonstrated questions of fact as to whether the plaintiff had serious medical needs with respect to his mental health and whether Dr. Mallik was deliberately indifferent to those needs. Dr. Mallik argues that the plaintiff's allegations against him require testimony from an expert in the same specialty area and that the plaintiff's psychiatric expert, Dr. Joy, did not offer the same opinion as Dr. Evans.

Upon review, based upon the report and testimony of Dr. Evans, Judge Saporito did initially group Dr. Mallik in with the Medical Defendants finding that a reasonable jury could conclude that the plaintiff's serious medical needs began days earlier, and that the failure of Dr. Mallik and the medical

---

[7] The court notes that Dr. Mallik's objections are untimely as they were due to be filed on or before March 19, 2020 and were not filed until March 23, 2020. In each case, procedural deadlines serve the purpose of keeping a case moving forward. Where a party is unable to meet set deadlines, the party is to request an extension of the deadline rather than submit late filings. Otherwise, the party risks having their filing stricken as untimely. In this instance, the court will consider Dr. Mallik's objections in order to clear the record and keep this case moving forward.

staff supervised by Dr. Zaloga to take action at an earlier date constituted deliberate indifference. However, Judge Saporito went on to rely on the report of the plaintiff's psychiatric expert, Dr. Joy, in finding that, despite the plaintiff suffering from bi-polar disorder and schizophrenia, he received no meaningful mental health evaluation or treatment at all. In fact, after extensive discussion of what was, in her opinion, Dr. Mallik's substandard handling of the plaintiff's situation, Dr. Joy concluded:

> [Plaintiff] received substandard psychiatric care, including the following breaches, as described above in more detail:

- Inadequate documentation and communication of psychiatric status and needs, including in the chart, with correctional staff, with medical staff, et al.
- Inadequate assessment and treatment, including medication choices (type, dosage, route etc.), informed consent, treatment planning, follow up intervals, et al.
- Inadequate monitoring, including of time spent in restraint chair, changes in psychiatric and medical status, et al.
- Inadequate supervision, including nursing staff.

> The substandard staffing, training, policy implementation, quality assurance, use of restraints, documentation, and professionalism all contributed to the substandard care provided to [plaintiff's] obvious serious mental and physical needs.

(Doc. 99-8, p. 12). It was in light of this opinion, as well as other evidence in the record including the plaintiff's deposition testimony, that Judge Saporito concluded that viewing the evidence in a light most favorable to the plaintiff as the non-moving party a reasonable jury could conclude that the plaintiff

suffered a serious psychiatric medical need and that Dr. Mallik was deliberately indifferent to that need. The court finds this conclusion is supported by the evidence of record and therefore Dr. Mallik's objections will be overruled on this basis.

In addition, like the Medical Defendants, Dr. Mallik argues that there is no evidence to support a supervisory liability claim against him. Dr. Mallik argues that Judge Saporito does not cite to any references in the record that he was involved in the adoption and implementation of any polices or procedures that were in place at the prison and he, in fact, was not involved in any such policies. However, as stated by Judge Saporito, the plaintiff is not attempting to hold either the Medical Defendants or Dr. Mallik responsible for the adoption or implementation of any formal policy, but for the failure of these supervisory defendants to implement practices with respect to staffing and training. As noted by Judge Saporito, the plaintiff has presented expert testimony indicating that Dr. Mallik failed to ensure adequate staffing to provide for basic psychiatric care and to ensure adequate training of staff, and that they did so in reckless disregard for the safety and well-being of inmates. The court agrees that, based upon this evidence, this claim should be allowed to proceed. As such, Dr. Mallik's objections will be overruled on this basis.

Finally, although Dr. Mallik concedes that the issue of punitive damages is one for the jury, he argues that no reasonable jury could find that plaintiff has set forth a viable claim for punitive damages against him. As with the medical defendants, given all of the evidence of record including, but not limited to, the plaintiff's experts' reports and depositions, the medical records and the plaintiff's own deposition testimony, the court finds that there is a question of fact remaining for the jury as to the punitive damages claim against Dr. Mallik. As such, his objections on this basis will be overruled as well.

The plaintiff has filed the final set of objections.[8] In his objections, the plaintiff argues that the John/Jane Doe defendants should not have been dismissed *sua sponte* from this action. To this extent, the plaintiff argues that because of a raid at the Lackawanna County Prison he did not have access to documents during discovery that would have identified the John/Jane Doe defendants involved in the claims alleged in his complaint. Despite this argument, the plaintiff goes on to state that he was going to obtain these documents through a subpoena for use at the time of trial. The plaintiff indicates that he would have done this sooner if he had known that

---

[8] As were Dr. Mallik's objections, the plaintiff's objections are untimely as they were not filed until April 2, 2020. See n.7.

identification of the John/Jane Doe defendants was an issue but, since the defendants did not raise the issue, he deemed it unnecessary.

This court has previously found that "[t]he use of John Doe defendants is permissible in certain situations until 'reasonable discovery permits the true defendants to be identified.'" King v. Mansfield Univ. of Pa., 2014 WL 3734551, at *1 n.1 (M.D. Pa. July 28, 2014) (quoting Blakeslee v. Clinton County, 336 F. App'x 248, 250 (3d Cir. 2009). However, district courts within the Third Circuit have held that "if reasonable discovery fails to unveil the true identities" of the John Doe defendants, the John Doe defendants should be dismissed. Id. (dismissing a plaintiff's claims against John Doe defendants at summary judgment stage because the true identities of those individuals were not made known after a "lengthy period of discovery," and they had not been served by the plaintiff); see also Aponte v. Karnes, 2008 WL 360879, at *1 n.1 (M.D. Pa. Feb. 8, 2008) ("Absent compelling reasons, a district court may dismiss [John or Jane Doe] defendants if the plaintiff, after being granted a reasonable period of discovery, fails to identify them."); Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("[Doe defendants] must eventually be dismissed, if discovery yields no identities.").

Whether or not the defendants raised the issue, the Federal Rules of Civil Procedure provide plaintiff notice that failure to identify and serve the

John/Jane Doe defendants within a certain period of time could result in *sua sponte* dismissal of the claims against these defendants. <u>See</u> Fed.R.Civ.P. 4(m). Moreover, the plaintiff was made aware of his need to amend his complaint and join any additional parties on or before June 1, 2018, pursuant to an order of court. He neither complied with the court's order, nor did he seek an extension of time to do so. (Doc. 53). The plaintiff failed to meet his obligations with respect to the John/Jane Doe defendants despite having ample opportunity to do so.[9] As a result, Judge Saporito was well within his authority to recommend dismissal of the plaintiff's complaint as to these defendants. <u>See</u> Fed.R.Civ.P. 21. The plaintiff's objections with respect to the John/Jane Doe defendants will be overruled.

The plaintiff's only other objection is to the *sua sponte* dismissal of his claims against individual defendants O'Malley, Wansacz, Staback, McMillian, Mortizkat, Collarini, Rodriguez, Ortona, Nurse Ken, Sayer, Hughes, Johnson, Lavin, Hughes, Mazzino, Antoine, Ortona, Aloe, Trama, Myers, Robinson, Gerrity, Soprinski, Doughty, Ancherani, Delfino and

---

[9] The plaintiff filed this action on May 22, 2017. Based upon the parties' submissions, they were given until June 1, 2018 to join additional parties or amend their pleadings, and fact discovery closed December 1, 2018. The plaintiff admittedly had a method by which to obtain the information necessary to identify the John/Jane Defendants yet failed to utilize that method to identify those defendants.

*(footnote continued on next page)*

Gorton.[10] As to the dismissal of these defendants, the plaintiff argues that Judge Saporito erred in considering dismissal pursuant to the screening provision of 28 U.S.C. §1915A at the time of summary judgment.

Judge Saporito relied on two provisions of the Prison Litigation Reform Act: 28 U.S.C. §1915A and 42 U.S.C. §1997e. Pursuant to §1915A, a court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and dismiss any portion of the complaint which "fails to state a claim upon which relief may be granted." 28 U.S.C. §1915A(a)-(b)(1). Along a similar line, §1997e provides that a court "shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted." 42 U.S.C. §1997e(c)(1).

-------------------------------------

[10] Although Judge Saporito dismissed these defendants *sua sponte,* the court notes that both the Correctional Defendants (Doc. 102, p. 5) and the Medical Defendants (Doc. 97-2, pp. 12-13) each argued in relation to their motions for summary judgment that the plaintiff failed to make specific allegations against each of the individual defendants and failed to produce sufficient evidence supporting such claims.

Even assuming as the plaintiff argues that §1915A cannot be used as a basis to screen a claim at the summary judgment stage and must be used at an earlier stage, §1997e(c) applies throughout the litigation and provided Judge Saporito with the authority to review the plaintiff's claims against the dismissed individuals, regardless of the stage of the case. Grayson v. Mayview State Hosp., 293 F.3d 103, 109 n.11 (3d Cir. 2002) (citation and internal quotation marks omitted) (explaining that "the PLRA sets up a two-step dismissal process by which dismissal can occur early for the facially inadequate complaints pursuant to [28 U.S.C. §1915A] or can occur later" if it becomes apparent that the dismissal provision of 42 U.S.C. §1997e(c) is satisfied). See Beenick v. LeFebvre, 684 F. App'x 200, 204-05 (3d Cir. 2017). Therefore, the court will overrule the plaintiff's objections on this basis.

As to these defendants, the plaintiff also argues that dismissal for failure to state a claim pursuant to 28 U.S.C. §1997e was improper because these defendants were generally referred to in his complaint as "Individual Corrections Defendants" and "Individual Medical Defendants" and the complaint alleges what these general groups of defendants did to violate his constitutional rights.

Judge Saporito dismissed the foregoing Corrections Defendants and Medical Defendants based upon the plaintiff's failure to establish their

personal involvement in the claims against them. Specifically, Judge Saporito found that while each of the defendants was named in the caption of the complaint and identified once in the body of the complaint, the plaintiff failed to allege any conduct engaged in by any of the listed individual defendants.

Individual liability under §1983 requires a plaintiff to show that the individual defendant was personally involved in the alleged constitutional violations. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be established by showing that the defendant actually participated in the alleged violation or knew of and acquiesced in the violation. Rode, 845 F.2d at 1207. The Third Circuit has previously found persuasive the observation that "[v]ague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct[,]" cannot show the necessary personal involvement or meet the notice pleading standards of Federal Rule of Civil Procedure 8(a). Park v. Temple Univ., 757 F. App'x 102, 109 (3d Cir. 2018) (citing E.g., Engel v. Buchan, 710 F.3d 698, 710 (7th Cir. 2013) (quoting Grieveson v. Anderson, 538 F.3d 763, 778 (7th Cir. 2008) ); Marcilis v. Twp. of Redford, 693 F.3d 589, 596-97 (6th Cir. 2012)). The Third Circuit went on to provide that "[a] court must be able to discern 'who is responsible for what'

from the operative pleading. Id. (citing *Engel*, 710 F.3d at 710). Because the plaintiff set forth generalized allegations against individual Corrections Defendants and Medical Defendants who were simply lumped into a group, the court finds that Judge Saporito was justified in dismissing those defendants for the plaintiff's failure to state a claim upon which relief can be granted. As such, the plaintiff's objections will be overruled on this basis.

Finally, the plaintiff takes issue with Judge Saporito finding that allowance of amendment would be futile based, in part, on the summary judgment record. In doing so, Judge Saporito found that "based on the facts alleged in the complaint and the additional evidence proffered by the parties in connection with summary judgment, it is clear that amendment would be futile."[11] The plaintiff argues that the record submitted to the court on summary judgment is relevant only to the specific issues raised by the defendants and that had the defendants sought dismissal of the claims against the foregoing individual defendants he would have submitted evidence in support of those claims.

---

[11] Judge Saporito cited specifically to the plaintiff's own deposition testimony in which he, in large part, could not identify any specific actions taken by the various defendants let alone actions which would rise to the level of a constitutional violation.

Initially with respect to this objection, as noted previously, both the Corrections Defendants and the Medical Defendants took issue in their motions for summary judgment with the plaintiff's failure to state a claim with regard to the foregoing defendants. The plaintiff failed to respond to the defendants' arguments in any manner. Moreover, although there is no apparent precedent from the Third Circuit on the matter, other courts have found that, although evidence outside of the pleadings cannot be considered for purposes of deciding a motion to dismiss, evidence outside of the pleadings may be considered for the limited purpose of deciding whether to grant leave to amend. Further, at least one other court in this district has recently adopted a report by Judge Saporito setting forth this same. See Bell v. Rothrock, 2020 WL 1244595 (March 15, 2020 M.D.Pa.) *adopting* 2020 WL 1288484 (Jan. 30, 2020 M.D.Pa.).[12] Finally, as to any amendment with respect to these defendants, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Even if not futile, to allow the plaintiff leave to amend his complaint at this juncture, well after the time for discovery and amendment of the pleadings has passed, would

---

[12] The court notes that in Bell no objections were filed. As such, the court was reviewing the report and recommendation for clear error.

- 24 -

be both inequitable and prejudicial to the defendants. As such, denial of leave to amend was justified and the plaintiff's objections will be overruled on this basis as well.

With the exception of the above, the parties have filed no other objections to Judge Saporito's report and recommendation. The court has reviewed Judge Saporito's reasoning with respect to the remaining recommendations and finds no clear error of record. Therefore, the court will adopt those recommendations in all respects.

Based upon the foregoing, an appropriate order shall issue.



*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**DATE: October 15, 2020**
17-903-01